O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| OAKLEY, INC., et al., | ) | Case No. CV 09-07666 DDP (RNBx) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING PLAINTIFFS' MOTION** |
| | ) | **FOR PARTIAL SUMMARY JUDGMENT AND** |
| v. | ) | **GRANTING PLAINTIFFS' MOTION FOR** |
| | ) | **SUMMARY JUDGMENT RE: DEFENDANT'S** |
| SEAN McWILLIAMS et al., | ) | **COUNTERCLAIMS** |
| | ) | |
| Defendants. | ) | [Motions filed on July 28, 2011] |
| _____ | ) | |

Presently before the court is Oakley, Inc. and James Jannard's (together "Plaintiffs"'s) Motion for Summary Judgment as to First Cause of Action for Libel and Motion for Summary Judgment as Re: Defendant's Counterclaims. Sean McWilliams ("Defendant") opposes both motions. After reviewing the papers submitted by the parties and considering the arguments therein, the court GRANTS Plaintiffs' Motion for Summary Judgment as to First Cause of Action for Libel and Motion for Summary Judgment as Re: Defendant's Counterclaims.

**I. Background**

Prior to 2006, Sean McWilliams ("McWilliams") worked as a consultant for Oliver Peoples, a sunglasses company. (Complaint ¶ 8.) As a consultant, McWilliams provided Oliver Peoples with

various product samples. (Plaintiff's Points & Auth. in Support of Motion for Summary Judgment, 1.)  In 2006, Oakley, Inc. ("Oakley") acquired the company Oliver Peoples. (Baden Decl. ¶ 3.)  At that time, Oakley and its founder James Jannard ("Jannard") had no knowledge or awareness of McWilliams. (Baden Decl. ¶ 4; Jannard Decl. ¶¶ 7-8.)  Soon after the acquisition of Oliver Peoples by Oakley, personnel from Oliver Peoples began receiving harassing emails from McWilliams, some of which alleged McWilliams had sexual relations with an employee of Oliver Peoples. (Gray Decl. ¶3.) McWilliams does not dispute that he sent these emails. (See Answer ¶ 13.)

For a short period of time McWilliams ceased sending emails to Oliver Peoples and Oakley staff.  In June 2007, McWilliams became aware of a proposed acquisition of Oakley by Luxottica Group S.p.A ("Luxottica"), and resumed sending harassing emails to Oakley, Oliver Peoples, Luxottica, and other third parties. (See Jannard Decl. ¶¶ 6-8; Gray Decl. ¶ 4.)  McWilliams admits to sending these emails. (See Answer ¶¶ 13, 14, 22.)

The emails contained harassing statements; pornographic images of McWilliams, which he claims were generated by Jannard and Oakley; statements attacking the character of Jannard and Oakley; and accusations that Jannard and Oakley were involved in price fixing, misleading investors, issuing death threats, and a cover up. (Answer, Exs. 53-61.)  Specifically, McWilliams accused Oakley of sponsoring charity fraud, being part of a price fixing cartel, and of hiring "Blackwater" thugs to intimidate him. (Answer ¶¶ 14-16).  McWilliams accused Jannard of being "criminal," and of marital infidelity. (Answer Exs. 114, 125-127.) In his answer,

2

"McWilliams admits documenting pornographic images in only a handful of emails with law enforcement agencies, including the DOJ . . . ." (Answer ¶ 22.) In at least one instance, Plaintiffs claim that McWilliams posed as Jannard, who then supposedly made death threats to the President of the United States while impersonating McWilliams. (Answer Exs. 73-75.)

The emails were sent to Jannard's employees, associates, business partners, and industry personnel. (Jannard Decl. ¶¶ 8, 12, 23.) McWilliams also states that he sent emails to "third parties, including the Justice Department, (FBI), State Dept., etc." (Answer ¶¶ 14, 22.) Plaintiffs contend that McWilliams has used more than 22 email addresses presenting himself as Jannard, Oakley, Oliver Peoples or Luxottica. (Nelson Decl. Ex. 16.) Several third party recipients have requested McWilliams stop sending emails due to "clogged inboxes." (Pl. Points & Auth. in Support of Motion for Summary Judgment, ¶ 15.)

Both Jannard and Oakley claim that these emails have tarnished their reputation, caused serious embarrassment, and are not true. (Complaint ¶ 14.) McWilliams "admits to sending emails [] to plaintiffs and third parties," but he "denies said emails contained untruthful allegations, harassing statements and otherwise discriminatory, racist and hateful communications." (Answer ¶ 22.)

In October 2009, Plaintiffs filed the present suit against Defendant with claims for slander, libel, fraud, publication of facts placing in false light, and intentional infliction of emotional distress. (Dkt. No. 1.) Defendant filed an answer and counterclaim, in which he alleged intentional infliction of emotional distress. (Dkt. No. 23.) Plaintiffs now move for

Case 2:09-cv-07666-DDP -RNB   Document 87   Filed 09/16/11   Page 4 of 13   Page ID
 #:1435

summary judgment on their complaint as well as Defendant's counterclaim.

**II.  Legal Standards**

    **A.   Summary Judgment**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law."  Id. at 248.  No genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings."  Anderson, 477 U.S. at 259.  Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 325.  The "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment.

Anderson, 477 U.S. at 252.

**III. Discussion**

Plaintiffs bring claims for slander, libel, fraud, publication of facts placing in false light, and intentional infliction of emotional distress. (Compl. ¶¶ 16-44.) For purposes of the present motions for summary judgment, Plaintiffs limit their arguments to the issue of libel and Defendant's counterclaim of intentional infliction of emotional distress.

**A. Libel**[1]

Plaintiffs allege that Defendant committed libel by intentionally publishing false facts, in writing via email, which in turn have injured the reputation, character, and business of Oakley and Jannard. (Compl. ¶¶ 16-23.)

Libel is defined in the California Civil Code as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has the tendency to injure him in his occupation." Cal. Civ. Code § 45. A statement is libel on its face if it "is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo, or other extrinsic fact." Id. § 45a. In order to succeed on a claim of libel, Plaintiffs must show (1) an intentional publication by writing of a fact; (2) which fact is false; and (3) unprivileged,

---

[1] Plaintiffs' title their first cause of action "slander per se." Thereafter, Plaintiffs proceed to offer evidence and make argument in support of a claim for libel. Plaintiffs have also titled their Motion for Summary Judgment as to First Cause of Action for Libel. Accordingly, the court construes the first cause of action as one for libel.

5

and (4) which has a tendency to injure or cause special damages. Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999). "Statements which falsely impute the commission of a crime are libelous on their face." Yow v. National Enquirer, Inc., 550 F. Supp. 2d 1179, 1183 (E.D. Cal. 2008).

Here, it is undisputed that Defendant intentionally sent derogatory emails to third parties, declaring that Oakley and Jannard were guilty of criminal and immoral activity, which subsequently damaged the character and reputation of Plaintiffs. (See, e.g., Answer ¶¶ 16, 18.) Indeed, Defendant does not deny the content of the emails or that he wrote and sent them. Therefore, the court concludes that Plaintiffs have made a prima facie showing of libel.

Defendant, however, argues that his statements about Plaintiffs are in fact true and privileged, warranting an absolute defense. As McWilliams states in his Answer, "[he] denies plaintiffs allegations that the content of the above referenced emails are false, or lies . . . ." (Answer ¶ 16.) "In all cases of alleged defamation, whether libel or slander, the truth of the offensive statements or communications is a complete defense against civil liability, regardless of bad faith or malicious purpose." Smith, 72 Cal. App. 4th at 646. Defendant alternatively argues that Plaintiffs are public figures and his statements with respect to the are, therefore, privileged.

The court, therefore, proceeds to consider the truth of the statements at issue and whether they were, as Defendant argues, privileged.

///

### i. Truthfulness

Defendant argues that his statements about Plaintiffs are in fact true, warranting an affirmative defense. As noted above, the truth of the offensive statements or communication is a complete defense. Smith, 72 Cal. App. 4th at 646. Because Plaintiffs have made a prima facie showing of libel, Defendant must now "justify or show the truth of his statements." Id.; see Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Evidence offered in opposition to a motion for summary judgment must be sufficiently probative to permit a resonable trier of fact to find in favor of the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. Id.

In this case, Defendant has presented no verifiable evidence tending to show the truth of his accusations. Defendant's only evidence in support of the truthfulness of his statements is self-produced emails. In emails written by Defendant, Defendant accuses Plaintiffs of price fixing, misleading investors, and issuing death threats. (See, e.g., Def.'s Opp'n, Ex. 108, 108a, 109.) Defendant also accuses Jannard of cheating on his wife. (Id., Ex. 116-117.)

Defendant's arguments "rest[s] on mere allegations or denials" made in his pleadings and exhibits attached thereto. Anderson, 477 U.S. at 252. For example, Defendant has failed to identify any documents evidencing that Jannard or Oakley are criminals, and all three of the exhibits in support of his claim that Oakley and Jannard benefited from charity fraud are emails written by Defendant. (Def.'s Opp'n, Ex. 108, 108a, 109.) A declaration and exhibits speculating about what might be is not enough to oppose

7

summary judgment.  See Kaplan v. Rose, 49 F.3d 1363, 1378 (9th Cir. 1994).  Defendant has not come forward with "sufficiently 'specific' facts from which to draw reasonable inferences about other material facts that are necessary elements of [his] claim." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

Because Defendant has not raised a triable issue of fact as to the truth of the allegations in his emails, Defendants affirmative defense of truthfulness fails.

### ii. Privilege

Alternatively, Defendant argues that Plaintiffs are public figures, and his statements are therefore privileged.  In particular, Defendant argues that Plaintiffs, by allegedly participating in fraud, "voluntarily inject themselves into a particular public controversy and thereby become public figures for a wide range of issues."  (Defs. Opp'n ¶ 30).

> In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.  More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.

Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974).

In determining whether an individual or organization is considered a public figure, "the Court looks for evidence of affirmative actions by which purported public figures have thrust themselves into the forefront of particular public controversies." Live Oak Publishing Co. V. Cohagan, 234 Cal. App. 3d 1277, 1289 (1991).  Here, Plaintiffs maintain that the mere fact that they are

8

engaged in commercial activity does not mean that they are "public figures." (Pls.' Reply 8-9.) The court agrees.

It is well established that "merely because a corporation sells services to the public . . . and merely because it employs and has access to the media to advertise its services . . . does not mean that such an ability gives the corporation the status of one with greater power on public issues." Rancho La Costa v. Superior Court, 106 Cal. App. 3d 646, 660 (1980). In the present action, Defendant has offered no evidence in support of his assertion that Plaintiffs "injected" themselves into a public controversy. The fact that Oakley sells products to the public is not enough to treat Oakley as a public figure. Absent any evidence whatsoever to the contrary, the court concludes that for the purposes of the present action Plaintiffs are not public figures, Plaintiffs have not "thrust" themselves into a public controversy, and the publication was, therefore, not privileged. Accordingly, Plaintiffs are entitled to summary judgment in their favor on their claim for libel.

**B.   Permanent Injunction**

Plaintiffs move this court for a permanent injunction. In particular, Plaintiffs request that this court issue an order prohibiting Plaintiff "from making the same statements as in Exhibits 1 through 141 of his declaration, as well as the general statements identified by Plaintiffs in their Exhibits 1 through 14." (Pls.' Reply 11:21-12:2.) In support of their request, Plaintiffs cite the California Supreme Court case Balboa Island Village Inn, Inc. v. Lemen, 156 P.3d 339, 332-33 (2007). In Balboa Island, the Court issued a permanent injunction barring the

9

defendant in that case from making specific statements in the future. Id. at 351-52. The court reasoned that the "right to free speech would not be infringed by a properly limited injunction prohibiting defendant from repeating statements about plaintiff that were determined at trial to be defamatory." Id. at 332.

Here, unlike in Balboa Island, the defamatory statements at issue have not been identified with sufficient particularity to rule on them one by one. Plaintiffs point to a huge volume of exhibits. Those exhibits presumably include both protected statements and non-protected defamatory statements. Without argument and a record that permits the court to consider Plaintiffs' request for a permanent injunction enjoining Defendant's speech on a statement by statement, the court is not in a position to consider Defendants' request.

The court reminds Plaintiffs that the permanent injunction they seek would enjoin speech. As the Supreme Court has explained,

> [a]n order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order. In this sensitive field, the State may not employ 'means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' In other words, the order must be tailored as precisely as possible to the exact needs of the case.

Carrol v. Princess Anne, 393 U.S. 175, 183-84 (1968); see also Evans v. Evans, 162 Cal. App. 4th 1157, 1167 (2008) (finding that a preliminary injunction prohibiting the defendant in that case from making defamatory statements was unconstitutional). For these reasons, Plaintiffs request for a permanent injunction is denied.

**C. Defendant's counterclaim of intentional infliction of emotional distress.[2]**

Plaintiffs move this court for summary judgment in their favor on Defendant's counterclaim. Plaintiffs argue that Defendant has failed to present sufficient evidence to set forth even a <u>prima facie</u> case of intentional infliction of emotional distress.

California Law requires the following elements be shown in order to make a <u>prima facie</u> case of intentional infliction of emotional distress: (1) extreme and outrageous conduct by defendants with the intent of causing, or reckless disregard for the probability of causing, emotional distress; (2) the suffering of severe or emotional distress; and (3) the fact that the outrageous conduct actually and proximately caused the distress. <u>Conley v. Roman Catholic Archbishop of San Francisco</u>, 85 Cal. App. 4th 1126, 1133 (2000). To be deemed outrageous, the alleged conduct causing emotional distress must be so extreme as to exceed all bounds that are tolerated in a civilized society. <u>King v. AC&R Advertising</u>, 65 F.3d 764, 769 (9th Cir. 1995). A defendant against such claims, who is moving for summary judgment must show that one or more elements of the "cause of action . . . cannot be established". <u>Aguilar v. Atlantic Richfield Co.</u>, 24 P.3d 493, 510 (Cal. 2001).

Here, Defendant claims Plaintiffs had emails sent to Defendant by "hired thugs" and that Plaintiffs hired investigators to surveil him, which caused him to suffer emotional distress. Plaintiff

---

[2] Defendant listed two separate counterclaims in his response to Plaintiffs' complaint: "Intentional Infliction of Tremendous Mental Suffering," and "Intentional Infliction of Emotional Distress." Because these appear to be the same claim, the court considers them together.

11

argues that Defendant's only evidence is "self serving writing by himself, reflecting his speculation," which is uncorroborated.

The court agrees. Defendant has not presented any evidence that could support showing of intentional infliction of emotional distress. The emails that Defendant relies on show no indication that they were sent from Oakley or Jannard, and Defendant has not produced any additional evidence to support that claim. In opposition to summary judgment, where Plaintiff's proffered evidence is "plainly self-serving and no corroboration [is] available," there are no "guarantees of trustworthiness" to satisfy the admission of evidence. See, e.g., <u>Bulthuis v. Rexall Corp.</u>, 789 F.2d 1315, 1316 (9th Cir. 1985)(concluding that Plaintiff's mother's testimony that her attending doctor told her she was being given a specific prescription drug was not admissible to oppose summary judgment because there were no guarantees of trustworthiness as required by Fed. R. Evid. 803, and "the statement of plaintiff's mother was plainly self serving and no corroboration was available"). "Declarations made upon 'information and belief' rather than upon personal knowledge are entitled to no weight at summary judgment." <u>Certain Underwriters at Lloyd's of London v. American Saftey Insurance Services, Inc.</u>, 702 F. Supp. 2d 1169,1172 (C.D. Ca. 2010).

Because Defendant has not presented any evidence of extreme and outrageous conduct by Plaintiffs in support of his counterclaim for intentional infliction of emotional distress, nor has Defendant produced any evidence that Plaintiffs have undertaken an activity that actually or proximately caused Defendant distress, the court finds there is no genuine issue of triable fact as to Defendant's

counterclaim. Plaintiffs are entitled to summary judgment in their favor as to Defendant's counterclaims.

### IV. Conclusion

For the reasons stated above, the court GRANTS Plaintiffs' Motion for Partial Summary Judgment and GRANTS Plaintiff's Motion for Summary Judgment Re: Defendant's Counterclaims.

IT IS SO ORDERED.

Dated: September 16, 2011

DEAN D. PREGERSON
United States District Judge

13